IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARATHON CAPITAL LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION, THOMAS BENNINGER, JULIANA L. CHUGG, DENISE CLARK, KEITH COZZA, JOHN DIONNE, JAMES HUNT, ANTHONY RODIO, DON KORNSTEIN, COURTNEY MATHER, JAMES L. NELSON, AND RICHARD SCHIFTER,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Marathon Capital LLC ("Plaintiff"), by its attorneys, alleges upon information and belief, except for its own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Caesars Entertainment Corporation ("Caesars" or the "Company") brings this action against the members of Caesars' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Eldorado Resorts, Inc. ("Eldorado").

2. On June 24, 2019, the Company entered into a definitive agreement and plan of merger ("Merger Agreement"), by which Company will be acquired by Eldorado (the "Proposed Transaction"). Under the terms of the Merger Agreement, Caesars stockholders will receive $8.40

in cash and 0.0899 shares of Eldorado common stock for each share of Caesars common stock (the "Merger Consideration"). Eldorado stockholders will control 51% of the combined company.

3.  On September 3, 2019, Eldorado filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities & Exchange Commission as approved by Caesars and its directors. The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the financial projections of Eldorado, the key inputs into the financial analyses performed by PJT Partners LP ("PJT"), and the sales process leading up to the signing of the Merger Agreement.

4.  Without additional information, the Registration Statement is materially misleading in violation of federal securities laws.

5.  By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.  The vote of Caesars stockholders to approve the Proposed Transaction (the "Stockholder Vote") is forthcoming. Under the Merger Agreement, the Proposed Transaction will be consummated following a successful Stockholder Vote.

7.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Caesars common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play, substantial justice, and under Section 27 of the Exchange Act.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the NASDAQ Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

**PARTIES AND RELEVANT NON-PARTIES**

11. Plaintiff is, and has been at all relevant times, the owner of Caesars common stock.

12. Defendant Caesars is a corporation organized and existing under the laws of the state of Delaware. It maintains principal executive offices at One Caesars Palace Drive, Las Vegas, NV 89109. Caesars common stock is listed for trading on the NASDAQ under the ticker symbol "CZR."

13. Defendant Thomas Benninger ("Benninger") has served as a director of the Company since October 2017.

14. Defendant Juliana L. Chugg ("Chugg") has served as a director of the Company since December 2018.

15. Defendant Denise Clark ("Clark") has served as a director of the Company since October 2018.

16. Defendant Keith Cozza ("Cozza") has served as a director of the Company since March 2019.

17. Defendant John Dionne ("Dionne") has served as a director of the Company since October 2017.

18. Defendant James Hunt ("Hunt") has served as a director of the Company since October 2017 and is the Chairman of the Board.

19. Defendant Don Kornstein ("Kornstein") has served as a director of the Company since October 2017.

20. Defendant Courtney Mather ("Mather") has served as a director of the Company since March 2019.

21. Defendant James L. Nelson ("Nelson") has served as a director of the Company since March 2019.

22. Defendant Anthony Rodio ("Rodio") has served as a director of the Company since May 2019 and is the Company's Chief Executive Officer ("CEO").

23. Defendant Richard Schifter has served as a director of the Company since May 2017.

24. Defendants referenced in ¶¶ 13 through 23 are collectively referred to as Individual Defendants and/or the Board.

25. Relevant non-party Eldorado is a Nevada corporation with principal executive offices at 100 West Liberty Street, Suite 1150, Reno, Nevada 89501. Eldorado's common stock is listed for trading on the NASDAQ under the ticker symbol "ERI."

**FURTHER SUBSTANTIVE ALLEGATIONS**

26.     On June 24, 2019, Eldorado and Caesars issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> HRENO and LAS VEGAS, Nev. June 24, 2019 – Eldorado Resorts, Inc. (NASDAQ: ERI) ("Eldorado," "ERI," or "the Company") and Caesars Entertainment Corporation (NASDAQ: CZR) ("Caesars") announced that they have entered into a definitive merger agreement to create the largest U.S. gaming company. The proposed transaction will combine two leading gaming companies with complementary national operating platforms, strong brands, strategic industry alliances, and a collective commitment to enhancing guest service and shareholder value. The combined company will provide its guests with access to approximately 60 domestic casino–resorts and gaming facilities across 16 states. The transaction is transformational for each company's shareholders, employees and customers, combining Eldorado's operational expertise with Caesars industry-leading loyalty program, regional network and Las Vegas assets. Summary of Caesars Transaction Eldorado will acquire all of the outstanding shares of Caesars for a total value of $12.75 per share, consisting of $8.40 per share in cash consideration and 0.0899 shares of Eldorado common stock for each Caesars share of common stock based on Eldorado's 30- calendar day volume weighted average price per share as of May 23, 2019, reflecting total consideration of approximately $17.3 billion, comprised of $7.2 billion in cash, approximately 77 million Eldorado common shares and the assumption of Caesars outstanding net debt (excluding face value of the existing convertible note). Caesars shareholders will be offered a consideration election mechanism that is subject to proration pursuant to the definitive merger agreement. Giving effect to the transaction, Eldorado and Caesars shareholders will hold approximately 51% and 49% of the combined company's outstanding shares, respectively. Upon completion of the transaction the combined company will retain the Caesars name to capitalize on the value of the iconic global brand and its legacy of leadership in the global gaming industry. The new company will continue to trade on the Nasdaq Global Select Market.
>
> **Strategic Rationale of Caesars Combination**
>
>   • Largest and Most Diversified Domestic Footprint and Scale: Unrivaled domestic footprint of approximately 60 owned, operated and managed casino–resorts across 16 states, creating nation's preeminent diversified gaming and entertainment company
>
>   • Best-in-Class Leadership: Eldorado's proven decentralized operating model combined with its history of completing successful, value-building

transactions through effective financial management to drive improved margins and create value for both shareholders and guests

• Iconic Brands and New Gaming Opportunities Will Enhance Customer Experience: Combines iconic global brands and industry-leading Caesars Rewards loyalty program with proven guest service focus to drive value across the expanded regional network, including access to attractive properties in Las Vegas and other gaming markets around the country

• Completion of Las Vegas Strip Room Remodels in 2021: Caesars Las Vegas asset portfolio has recently undergone $1.2 billion of enhancements and room remodels that positions the portfolio for improved operating performance in the near-term

• Significant Identified Synergies: Eldorado management has a demonstrated track record of successfully integrating acquired companies and achieving stated synergy targets and expects to achieve approximately $500 million of synergies in the first year following closing. Additionally, Eldorado sees long-term cost and revenue synergy upside opportunities

**Summary of $3.2 Billion Strategic Transaction with VICI**

VICI Properties, Inc. (NYSE: VICI) ("VICI") and Eldorado have entered into a master transaction agreement in connection with the acquisition of the real estate of three assets and amendment of existing leases and right of first refusals. Furthermore, in connection with the transaction, the parties have agreed to the following:

• VICI will acquire the real estate associated with Harrah's Resort Atlantic City, Harrah's Laughlin Hotel & Casino, and Harrah's New Orleans Hotel & Casino for approximately $1.8 billion. The properties will be added to an existing master lease and will have an initial annual rent of approximately $154 million. The proceeds from this transaction represent a rent multiple of 11.75x;

• An amendment to the terms of the existing CPLV and HLV single asset leases, following closing of the transaction, which will result in a combination of these existing leases into a new Las Vegas master lease and an increase in the annual rent payment on the Las Vegas master lease of $98.5 million, resulting in proceeds of approximately $1.4 billion. The proceeds represent a rent multiple of 14.25x;

• A put/call option on Caesars Centaur assets at a 12.5x put rent multiple / 13.0x call rent multiple, exercisable between January 2022 and December 2024; and,

• VICI granted right of first refusals for whole asset sale or sale-leaseback transactions on two Las Vegas Strip properties and Horseshoe Casino Baltimore

**Optimized Lease Structure and Balance Sheet**

• Win-Win Transaction with VICI: Strategic transaction with VICI encompassing amendments to existing leases and acquisition of the real estate of three properties generates $3.2 billion of gross proceeds to immediately strengthen the combined company's balance sheet, while providing growth for VICI

• Attractive Financial Profile: Materially enhanced financial scale and flexibility with additional growth and stability driven by the world's largest gaming customer database

• Commitment to a Strong Balance Sheet: Transaction expected to be immediately accretive to free cash flow with significant cash flows from the combined company to be allocated to leverage reduction

Tom Reeg, Chief Executive Officer of Eldorado, commented, "Eldorado's combination with Caesars will create the largest owner and operator of U.S. gaming assets and is a strategically, financially and operationally compelling opportunity that brings immediate and long-term value to stakeholders of both companies. Together, we will have an extremely powerful suite of iconic gaming and entertainment brands, as well as valuable strategic alliances with industry leaders in sports betting and online gaming. The combined entity will serve customers in essentially every major U.S. gaming market and will marry best-of-breed practices from both entities to ensure high levels of customer satisfaction and significant shareholder returns. "As with our past transactions, we have a detailed plan for significant synergy realization. Relative to our prior acquisitions, the combination with Caesars presents attractive incremental revenue synergy opportunities as we plan to strengthen Caesars Rewards, the industry's leading player loyalty and CMS database, and combine it with Eldorado's to market to over 65 million rewards customers nationally. Additionally, the transaction bears benefits beyond the strategic merits of the combination with Caesars in isolation. Our agreement with VICI favorably positions both platforms by enhancing the value of our combined company's assets and further solidifies the growth profile of VICI. "Eldorado's history of completing successful, value-enhancing transactions has focused on prioritizing operating discipline with the goal of delivering best-in-class gaming and entertainment experiences and amenities to customers, unlocking the long-term value of acquired companies and assets through effective financial management, and completing return-focused investments in our properties that elevate the guest experience as well as our competitive position and overall returns. We intend to allocate the significant free cash flow from the combined company to reduce leverage while investing to improve the customer

experience across the platform. We could not be more excited about the future as we bring together two industry leaders that will generate significant opportunities for our employees, customers, partners and shareholders."

Jim Hunt, Chairman of Caesars, said, "This announcement is the culmination of a thorough evaluation by the Caesars Board of Directors. The Board unanimously concluded that the combination of these two companies creating an even stronger entity is a decision for our shareholders' consideration and vote for immediate and ongoing value."

Tony Rodio, Chief Executive Officer of Caesars, added, "We believe this combination will build on the accomplishments and best-in class operating practices of both companies. I'm familiar with Eldorado and its management team, having worked with them on a previous transaction, and I look forward to collaborating with them to bring our companies together. We are excited to integrate Caesars Rewards with the combined portfolio. The incorporation of Caesars Rewards has produced strong results at the recently acquired Centaur properties. By joining forces, we believe the new Caesars will be well-positioned to compete in our dynamic industry."

Ed Pitoniak, Chief Executive Officer of VICI, said, "VICI is honored and excited to be integrally involved with Eldorado in this transformative transaction. As a REIT, we seek to partner with operators who have the most powerful, valuable and enduring relationships with the end users of our real estate. Under Tom Reeg's leadership and front-line focus, the combination of Eldorado and Caesars will yield the most compelling guest experiences and network effect in American gaming."

**Governance and Timing**

 • The combined company's Board of Directors will consist of 11 members, six of whom will come from Eldorado's Board of Directors and five of whom will come from Caesars Board of Directors

 • The transactions have been unanimously approved by the Boards of Directors of Eldorado, Caesars and VICI. The Caesars transaction is subject to approval of the stockholders of Eldorado and Caesars, the approval of applicable gaming authorities, the expiration of the applicable Hart-Scott-Rodino waiting period and other customary closing conditions, and is expected to be consummated in the first half of 2020

**Advisors**

J.P. Morgan, Credit Suisse and Macquarie Capital are serving as financial advisors to Eldorado. Milbank LLP and Latham & Watkins LLP are serving as Eldorado's legal counsel. PJT Partners LP is serving as financial advisor to

Caesars. Skadden, Arps, Slate, Meagher & Flom LLP is serving as Caesars legal counsel.

**The Registration Statement Misleads Caesars Stockholders by Omitting Material Information**

27. On September 3, 2019, the Company filed the materially misleading and incomplete Registration Statement with the SEC. Designed to convince Caesars stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial projections of Caesars, as well as the inputs used by PJT in the financial analyses underlying its opinion as to the fairness of the Proposed Transaction, and the process undertaken by the Board and Company management leading up to the signing of the Merger Agreement.

*Material Omissions Regarding the Financial Projections of Caesars*

28. The Registration Statement omits material information regarding the projected financial results for the Company, as provided to the Board and PJT.

29. The disclosure of the *Projections Regarding Unlevered Free Cash Flow of ERI and Caesars*, the Registration Statement discloses the projections of EBITDAR, EBITDA, and unlevered free cash flow for Caesar's, but omits the line items used to calculate the non-GAAP metric of unlevered free cash flow and these items, as well as the items necessary to reconcile unlevered free cash flow to the most comparable GAAP metric.

30. The above-referenced omitted information relating to the Company's financial projections would, if disclosed, significantly alter the total mix of information available to Caesars' stockholders regarding the future value of the Company.

31. Thus the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by PJT, or to perform their own valuation of the Company.

### *Material Omissions Concerning PJT's Financial Analyses*

32.     The Registration Statement describes PJT's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of PJT's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Caesars' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on PJT's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Caesars stockholders.

33.     With respect to PJT's *Selected Precedent Transaction Analysis*, the Registration Statement omits the selection criteria used by PJT in selecting the analyzed transactions, as well as the observed enterprise values, pricing multiples, and financial metrics for each selected transaction.

34.     With respect to PJT's *Discounted Equity Value Analysis*, the Registration Statement omits (i) the expense of stock based compensation; (ii) the estimated net debt and minority interests; (iii) the present value of Caesars' equity ownership in the Baltimore joint venture; (iv) the number of fully diluted number of shares of Caesars common stock as of December 31, 2022; and (v) the inputs and assumptions underlying the discount rate of 13.50%.

35.     With respect to PJT's *Discounted Cash Flow Analysis* for Caesars, the Registration Statement fails to disclose: (i) the range of terminal values of Caesars as of December 31, 2023 and the inputs and assumptions underlying the use of the exit multiple range of 8.25x to 9.25x; (ii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 9.25%; (iii) the

Company's estimated net debt; and (iv) the number of outstanding diluted shares of Caesars common stock as of December 31, 2019.

### *Material Omissions Concerning the Background of the Proposed Transaction*

36. While the Registration Statement discloses that the Company's transaction committee entered into confidentiality agreements with four prospective bidders and that these agreements contained "customary standstill provisions," there is no indication as to whether these "customary standstill provisions" contain so-called "don't-ask-don't-waive" ("DADW") provisions that preclude a party from making a topping bid for the Company.

37. A DADW provision prevents a party from approaching the Company's Board privately to request a waiver of the standstill provision in order to submit a superior proposal. Through the use of these DADW provisions, a Board may willfully blind itself to superior offers.

38. This omission is particularly notable because the Merger Agreement prohibits Caesars from soliciting superior alternatives to the Proposed Transaction. Thus the Board has willfully blinded itself to any superior offers from the other parties, if those parties entered into similar non-disclosure agreements.

39. Such information is material to Caesars stockholders as a reasonable Caesars stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

40. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Caesars**

63.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.    The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 and in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Caesars is liable as it approved the issuance of these statements.

65.    The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66.    The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68.    The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Caesars within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Caesars and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and to have exercised the same. The Registration Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 26, 2019

Respectfully submitted,

By: /s/ *William J. Fields*
William J. Fields
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (202) 337-1567
Email: wfields@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
   etripodi@zlk.com

*Attorneys for Plaintiff*

15